**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CEMAYLA, LLC dba FOUNDRAE, <br><br> *Plaintiff*, <br> v. <br><br> PANDORA JEWELRY LLC and <br> PANDORA A/S, <br><br> *Defendants*. | Civil Action No.: _____ <br><br> **JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

Plaintiff Cemayla, LLC, dba FoundRae ("FoundRae") for its complaint against Defendants Pandora Jewelry LLC and Pandora A/S, (together, "Pandora" or "Defendants"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      FoundRae is a luxury jewelry brand known for its hand-crafted "modern heirlooms" – pieces imbued with symbolic meaning and designed to tell a story.

2.      In 2015, Beth Hutchens created her first collection under the FoundRae brand, guided by the principle that jewelry should not just be an accessory, but a vehicle for self-discovery and self-expression. Drawing inspiration from ancient mythology and classical symbolism, Hutchens designed FoundRae's collections to evoke core tenets – foundational principles such as "strength," "protection," "wholeness," "vivacity" and "resilience." The resulting pieces are each "modern heirlooms" in that they are unique and timeless talismans designed to express the identity and personal values of the wearer.

3.      In only ten years' time, the FoundRae brand has already gained immense popularity, industry recognition, and a cult-like following. FoundRae has become best known for its medallion jewelry, highly coveted pieces that are sought after for their superior

craftsmanship and unique designs that are unlike any other jewelry on the market. FoundRae's medallions have been worn by the likes of Michelle Obama and Taylor Swift, and are frequently featured in major fashion magazines.

4.     FoundRae's catapult to fame has not gone unnoticed by others in the industry. Like many successful brands, FoundRae's designs have fallen prey to imitation. This case arises out of an effort by Pandora, a mass-market jewelry company that caters to customers at accessible price points, to create pieces emulating the unique aesthetic that FoundRae has so carefully cultivated.

5.     In August 2025, Pandora released a collection that it called the "Talisman Collection," inviting customers "*to wear the words you live by with jewelry that celebrates the past and the stories still to come.*" The collection, comprised of twelve medallions, is so similar in look and feel to FoundRae's signature pieces, and the marketing tactics promoting the collection so reminiscent of FoundRae's aesthetic, that FoundRae found itself fielding inquiries from customers pointing out the similarities between Pandora's Talisman Collection and FoundRae's medallions.

6.     Upon closer inspection of Pandora's collection, FoundRae learned that Pandora had not just imitated its aesthetic, but, in the case of the two medallions shown below (the "Infringing Products"), Pandora crossed the line to unlawful infringement by copying the protected elements of FoundRae's copyright-protected designs.

**Pandora's Infringing Products**     **FoundRae's Medallions**







7.     Despite bringing this matter to Pandora's attention, Pandora has continued to offer the Infringing Products for sale, leaving FoundRae with no choice but to file this lawsuit.

8.     In selling imitations of FoundRae's copyright-protected medallion designs, Pandora has engaged in willful copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*. To put a stop to this infringing conduct, FoundRae seeks injunctive relief, monetary relief in an amount sufficient to compensate it for its loss, an accounting and award of profits flowing from Pandora's infringing activities, prejudgment interest, costs and attorneys' fees, and all other relief the Court deems just and proper.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to Section 501 of the Copyright Act, 17 U.S.C. § 501, and Sections 1331 and 1338(a) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a).

10.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants' U.S. headquarters are located in this District. In addition, the Court has personal jurisdiction over Defendants under Sections 301 and/or 302 of the New York Civil

Practice Laws and Rules because Defendants conduct, transact, and solicit business in this District, including by operating retail stores in this District through which Defendants promote, offer for sale, and have sold the Infringing Products. Accordingly, the events giving rise to this Complaint occurred in the State of New York and/or had effects in this State, and FoundRae is being harmed in this jurisdiction.

11.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and/or 1400(a) because, upon information and belief, a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District, and/or Defendants or their agents may be found in this district.

## THE PARTIES

12.    Plaintiff Cemayla, LLC (dba FoundRae) is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 52 Lispenard Street, New York, New York 10013.

13.    Upon information and belief, Defendant Pandora A/S is a corporation organized and existing under the laws of Denmark, with its principal place of business at Havneholmen 17-19, 1561 Copenhagen V, Denmark (CVR nr.: 28505116). Upon information and belief, Defendant Pandora A/S designs, manufactures and markets jewelry, including the Infringing Products.

14.    Upon information and belief, Defendant Pandora Jewelry LLC is a limited liability company organized and existing under the laws of the State of Maryland. Upon information and belief, Defendant Pandora Jewelry LLC markets, offers for sale, sells and distributes in the United States jewelry designed and manufactured by Defendant Pandora A/S, including the Infringing Products.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

I.    **FoundRae's Business and Intellectual Property Rights**

A.    **The FoundRae Brand**

15.    FoundRae is a luxury fine jewelry brand founded in New York City in 2015. FoundRae designs are advertised and sold widely throughout the United States, not only through the FoundRae website at *foundrae.com*, but also through FoundRae's boutique stores located in New York City (Tribeca and Madison Avenue), Miami, Palm Beach, Los Angeles, Dallas and Aspen. In addition, FoundRae designs are offered for sale by third-party retailers, including *Net-a-Porter.com*, *Mytheresa.com*, Goop, and Saks Fifth Avenue.

16.    Only ten years after its inception, FoundRae has become a household name in the fashion world. FoundRae designs are consistently featured in widely circulated publications from *Vogue*, *Women's Wear Daily* and *Town and Country*, to *The New York Times*, *The Cut*, and *Forbes*. In 2025, *Vogue* ranked FoundRae among its favorite jewelry brands, stating "FoundRae has been a *Vogue* favorite since it was founded in 2015. The FoundRae mission is for each piece of jewelry to become part of the wearer, to tell a story, and to express one's identity and values."[1]

17.    FoundRae's popularity and acclaim goes hand in hand with that of its founder and creative director, Beth Hutchens, who has received industry recognition for her designs, including the GEM Award nomination for Retail Excellence in 2020, a nomination for "Emerging Designer of the Year" by the Council of Fashion Designers of America in 2019 and the 2018 Town & Country Jewelry Award for "Breakthrough of the Year." Most recently, Ms.

---

[1] Daisy Shaw-Ellis, *Need to Know Now: Vogue Jewelry Team's Favorite Jewelry Brands*, VOGUE (Sept. 26, 2025), available at https://www.vogue.com/article/best-jewelry-brands.

Hutchens won the 2025 GEM Award for Jewelry Design, an award given by the Jewelers of America, a national trade association that recognizes excellence in jewelry design.[2]

18.     Further enhancing the visibility of FoundRae and its coveted designs, celebrities, influencers and public figures from Gwyneth Paltrow, Zandaya, Jennifer Lopez and Naomi Watts, to Michelle Obama and Chimamanda Ngozi Adichie, have all been seen wearing FoundRae jewelry.[3] Most recently, FoundRae made national headlines when Taylor Swift was photographed wearing FoundRae earrings during her highly publicized engagement photoshoot.[4]

19.     FoundRae's enormous success is due in no small part to the brand's investment in marketing and advertising that reinforces the unique aesthetic for which the brand has become known. As one example, FoundRae employs a bespoke approach to visual merchandising, displaying its collections in a collage-like arrangement surrounded by notes, letters, photographs, imagery, tape, paperclips and other mementos with medallions from the collection interspersed throughout, often hanging from a book. This arrangement is meant to reinforce the concept that FoundRae pieces are modern heirlooms, carrying historic and symbolic meaning

---

[2] Thomas Waller, *2025 GEM Awards Fete Chanel, FoundRae and More*, WWD (Mar. 17, 2025), available at https://wwd.com/eye/fashion-features/2025-gem-awards-fete-chanel-foundrae-1237049387/.

[3] Sofia Celeste, *Everything You Need To Know About the Celebrity Favourite Jewellery Brand Telling Stories Through Symbolism,* HARPERS BAZAAR ARABIA (Feb. 16, 2022), available at https://www.harpersbazaararabia.com/fashion/watches-jewellery/foundrae-jewellery-interview; Kate Matthams, *Foundrae Jewelry Expands Into Highly Desirable Glassware With The Perfect #Stayhome Inspiration*, Forbes (Apr. 17, 2020), available at https://www.forbes.com/sites/katematthams/2020/04/17/foundrae-jewelry-glassware-stayhome-inspiration/.

[4] Emily Burack, *Taylor Swift Wears Foundrae Heart Earrings in Her Engagement Photos*, TOWN & COUNTRY (Aug. 27, 2025), available at https://www.townandcountrymag.com/style/jewelry-and-watches/a65902787/taylor-swift-foundrae-heart-earrings-engagement-photos/.

and intended to tell stories for generations to come. An example of FoundRae's visual displays is shown below:





20.     While FoundRae creates all types of jewelry, including bracelets, rings, earrings and necklaces, the brand has become best known for its medallion designs, each intended to evoke a certain symbol or tenet. The back of each medallion is engraved with the name of the symbol that the design on the medallion represents, as shown by way of the examples below:



"Strength" Medallion          "Wholeness" Medallion

"Resilience" Medallion          "Rose of the World" Medallion

**B.      FoundRae's Copyrighted Designs**

21.     To protect its original medallion designs, FoundRae has sought and obtained

numerous U.S. copyright registrations, including:

(a)      U.S. Copyright Registration No. VAu 1-419-866, issued February 16,

2021 and transferred to Plaintiff by assignment recorded on July 21, 2023 for a collection of

original medallion designs, including FoundRae's "CM74 Passion" design, shown below:



(b)    U.S. Copyright Registration No. VA 2-367-295, issued October 23, 2023, for FoundRae's "Oversized Exuberance Balance Medallion," shown below:



The foregoing copyrighted designs are hereinafter referred to collectively as the "Copyrighted Designs." Records from the U.S. Copyright Office of the registrations for the FoundRae Copyrighted Designs are attached hereto at **Exhibit A.**

22.    Plaintiff owns all right, title and interest in and to the Copyrighted Designs, which constitute original and copyrightable subject matter under the Copyright Act.

## II.    Defendants' Infringing Conduct

23.    Long after FoundRae became widely known and critically acclaimed for its original medallion designs, and long after FoundRae created the Copyrighted Designs in particular and acquired registrations from the U.S. Copyright Office therefor, Defendants manufactured, caused to be manufactured, displayed, advertised, distributed, and sold copies of FoundRae's Copyrighted Designs.

24.    Upon information and belief, Defendants operate the PANDORA brand under which Defendants sell various types of jewelry at accessible price points.

25.    Upon information and belief, Pandora jewelry is advertised, offered for sale, and sold through the Pandora website at *https://us.pandora.net/*, Pandora retail stores located across the United States, and through a network of third-party retailers.

26.    Upon information and belief, Pandora has an established practice of collaborating with third-party brands and franchises to create themed jewelry collections. For instance, Pandora has released collections in collaboration with Netflix, Marvel, Disney, and UNICEF. Upon information and belief, Pandora enters into license agreements for the use of others' intellectual property before releasing such collections.

27.    Upon information and belief, Pandora's third-party collaborations and partnerships are highly publicized and well known to consumers.

28.    Upon information and belief, on August 28, 2025, Pandora released a new collection called the "Talisman Collection," comprised of twelve medallions, each bearing a design meant to evoke a certain symbol.

29.    As shown below, several medallions in Pandora's Talisman Collection feature the very same symbols that appear on FoundRae's signature medallions. Moreover, like FoundRae, Pandora has engraved on the back of each medallion words to convey the symbolic meaning of the design that appears on the front of the medallion:





30.     FoundRae became aware of Pandora's Talisman Collection after numerous

FoundRae customers identified Pandora's collection as similar to FoundRae's signature

medallions.

31.     Upon inspection of the medallions in Pandora's Talisman Collection, FoundRae

learned that in at least two instances, Pandora did not just emulate the look, feel and symbolism

used on FoundRae's signature medallions, but Pandora copied nearly verbatim the protected expression of the original designs, as shown below:

**Pandora's Infringing Products**    **FoundRae's Copyrighted Designs**



32.    The Infringing Products shown in the preceding paragraph are substantially similar to FoundRae's Copyrighted Designs in terms of their protected elements.

33.    Upon information and belief, Pandora intentionally created the Infringing Products to copy FoundRae's Copyrighted Designs. Indeed, the fact that numerous pieces in Pandora's Talisman Collection mirror FoundRae's signature medallions (as shown in Paragraph 29), indicates that the similarities between the Infringing Products and FoundRae's Copyrighted Designs are not the result of mere coincidence, but of a campaign to deliberately copy FoundRae's designs.

34.    Further evidencing Pandora's intent to copy, Pandora's visual displays for its Talisman collection emulate the look and feel of FoundRae's long-used visual merchandising,

utilizing the same "collage-like" aesthetic, whereby pieces of jewelry are interspersed with photographs, images, notes and other mementos, as shown below.



35.    Upon information and belief, prior to manufacturing, causing to be manufactured, distributing, selling, and/or offering for sale the Infringing Products, Pandora had access to FoundRae's Copyrighted Designs, including because the Copyrighted Designs have been advertised, promoted and sold widely throughout the United States for years before Pandora manufactured, caused to be manufactured, distributed, offered for sale, and/or sold the Infringing Products.

36.    Upon information and belief, prior to Pandora's manufacturing, causing to be manufactured, distributing, selling, and/or offering for sale the Infringing Products, Pandora was aware of the FoundRae brand and of the commercial success and consumer appeal of FoundRae's products, including the Copyrighted Designs.

37.    Upon information and belief, Pandora manufactured, caused to be manufactured, distributed, sold and/or offered for sale the Infringing Products with knowledge that such products are copies of FoundRae's Copyrighted Designs.

38.    On October 6, 2025, FoundRae sent Pandora a letter expressing its concerns regarding similarities between pieces in Pandora's Talisman Collection and FoundRae's copyright-protected designs and demanding that such conduct immediately cease. Upon information and belief, Pandora has continued to offer the Infringing Products for sale.

39.    Pandora has not sought or received authorization from FoundRae for any purpose whatsoever, including for its imitation and reproduction of FoundRae's Copyrighted Designs.

40.    Pandora's distribution and sale of the Infringing Products unlawfully wrests from FoundRae control over its reputation and, on information and belief, is unjustly enriching Pandora.

41.    Pandora's unauthorized acts as described herein have caused and will continue to cause irreparable damage to FoundRae and its business unless restrained by this Court.

**FIRST CLAIM FOR RELIEF:**

**Copyright Infringement in Violation of 17 U.S.C. § 501**

42.    Plaintiff repeats and incorporates by reference the foregoing allegations as if fully set forth herein.

43.    The Copyrighted Designs are original works of authorship, embodying subject matter protected by copyright.

44.    Plaintiff is the sole and exclusive owner of all right, title, and interest in and to the Copyrighted Designs.

45.    Plaintiff has obtained from the United States Copyright Office registrations for the Copyrighted Designs.

46.    The Copyrighted Designs were federally registered prior to Pandora's copying.

47.    Pandora had access to the Copyrighted Designs because FoundRae has widely advertised these designs, has offered jewelry products bearing these designs for sale to the public through numerous trade channels, including FoundRae's website, boutique stores, and third-party retailers, and FoundRae's products bearing the Copyrighted Designs have been featured in the media, digital marketing campaigns, and social media channels (including Instagram and Tik-Tok).

48.    After the FoundRae Copyrighted Designs were published and Pandora had access to these designs, and after FoundRae secured registrations for these designs, Pandora infringed FoundRae's copyright in these designs by manufacturing, importing, exporting, displaying, advertising, reproducing, distributing, offering for sale, and/or selling the Infringing Products, which are substantially similar in overall appearance to the Copyrighted Designs.

49.    Pandora has thereby violated FoundRae's exclusive right in its Copyrighted Designs under Section 106 of the Copyright Act, 17 U.S.C. § 106, in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

50.    Upon information and belief, Pandora acted willfully and in bad faith in unlawfully manufacturing, importing, exporting, displaying, advertising, reproducing, distributing, offering for sale, and/or selling the Infringing Products.

51.    Pandora's infringement of FoundRae's exclusive rights in the Copyrighted Designs has caused FoundRae damage, and has enabled Pandora to profit illegally therefrom. Accordingly, FoundRae is entitled to damages in an amount to be proven at trial, Pandora's profits attributable to the infringement pursuant to 17 U.S.C. § 504, and costs and fees pursuant to 17 U.S.C. § 505.

52.     Pandora's copyright infringement has caused, and unless enjoined by this Court, will continue to cause, FoundRae to sustain irreparable damage, loss, and injury, for which FoundRae has no adequate remedy at law. Thus, FoundRae is entitled to an injunction against Pandora's continuing infringement of the Copyrighted Designs.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, FoundRae prays for judgment as follows:

1.     That a permanent injunction be issued enjoining Defendants, and any of Defendants' officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or in part by Defendants, from:

> (a)     Infringing the Copyrighted Designs, including without limitation, by manufacturing, reproducing, distributing, displaying, advertising, promoting, offering for sale, selling, importing, and/or exporting the Infringing Products or any other products that imitate the Copyrighted Designs or any other designs copied or derived from or substantially similar to the Copyrighted Designs; and
>
> (b)     Assisting or authorizing any third party to engage in any of the actions prohibited by subparagraph (a) above.

2.     Directing that Defendants turn over to FoundRae for impoundment and eventual destruction, without compensation to Defendants, all products or materials in Defendants' possession or control that violate the provisions of paragraph 1(a) above, along with all articles by means of which such unauthorized copies may be reproduced.

3.     Directing that Defendants, at their own expense, recall from distributors, retailers, vendors, or others to whom they have distributed products or materials that violate the provisions of paragraph 1(a) above, and that Defendants deliver up to FoundRae for destruction all products or materials returned to Defendants.

4.     Granting FoundRae monetary relief, including actual damages and Defendants' profits, as provided by 17 U.S.C. § 504(b), or statutory damages as FoundRae may elect as provided by 17 U.S.C. § 504(c).

5.     Awarding FoundRae its full costs, fees, and expenses incurred by reason of Defendants' unlawful acts, including, as part of FoundRae's costs, reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

6.     Awarding FoundRae punitive damages.

7.     Awarding FoundRae both pre-judgment and post-judgment interest on each and every monetary award.

8.     Granting FoundRae such other and further relief as the Court may consider equitable, just and proper.

## <u>JURY DEMAND</u>

9.     FoundRae respectfully requests a trial by jury as to all issues so triable.

Dated: February 17, 2026                          Respectfully submitted,

By:  */s/ John Margiotta*
      John P. Margiotta (*jmargiotta@fzlz.com*)

      Shelby P. Rokito (*srokito@fzlz.com*)
      FROSS ZELNICK LEHRMAN & ZISSU, P.C.
      151 West 42nd Street, 17th Floor
      New York, New York 10036
      Tel: (212) 813-5900

      *Attorneys for Plaintiffs*