John P. Margiotta (*jmargiotta@fzlz.com*)
Shelby P. Rokito (*srokito@fzlz.com*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CEMAYLA, LLC dba FOUNDRAE, <br><br> *Plaintiff*, <br><br> v. <br><br> PANDORA JEWELRY LLC and <br> PANDORA A/S, <br><br> *Defendants*. | Case No. 1:26-cv-01331-CM |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. ii

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     STATEMENT OF FACTS .................................................................................................3

        A.      The "Passion" and "Balance" Medallion Designs At Issue.................................. 4

        B.      Pandora's "Talisman Collection" and the Infringing Products.............................5

III.    STANDARD OF REVIEW FOR 12(b)(6) DISMISSAL OF A
        COPYRIGHT INFRINGEMENT CLAIM..........................................................................6

IV.     ARGUMENT.....................................................................................................................7

        A.      The FoundRae Designs Are Original Compositions Entitled to a
                Statutory Presumption of Validity, and Pandora's Argument to the
                Contrary Is Both Wrong and Premature .................................................................8

        B.      FoundRae Has Adequately Pled Actual Copying and Substantial
                Similarity...............................................................................................................11

                1.      FoundRae Has Sufficiently Alleged Facts That Support
                        Actual Copying .........................................................................................11

                2.      The FoundRae Designs and the Infringing Products Share
                        Substantial Similarity in Total Concept and Feel,
                        Foreclosing Dismissal...............................................................................12

                        a.      The Applicable Test for Substantial Similarity .............................13

                        b.      The Standard to Show a Lack of Substantial
                                Similarity on a 12(b)(6) Motion is High.......................................14

                        c.      Applying the Law to the Works at Issue, Pandora
                                Cannot Prevail on Its Motion........................................................16

        C.      The Third-Party Designs Are Outside the Pleadings, But In Any
                Event Only Underscore the Similarities Between the Works...............................19

V.      CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Aaron Basha Corp. v. Felix B. Vollman, Inc.*,
  88 F. Supp. 2d 226 (S.D.N.Y. 2000) ...................................................................................10

*Ackerman v. Pink*,
  23-CV-6952 (KPF), 2025 WL 716678 (S.D.N.Y. Mar. 6, 2025) ..........................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................................6

*Beaudin v. Ben & Jerry's Homemade, Inc.*,
  95 F.3d 1 (2d Cir. 1996) ..................................................................................................14, 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................6

*Boisson v. Banian, Ltd.*,
  273 F.3d 262 (2d Cir. 2001) .............................................................................................11, 17

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ..................................................................................................20

*Dean v. Cameron*,
  53 F. Supp. 3d 641 (S.D.N.Y. 2014) .................................................................................18, 19

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ....................................................................................................6

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
  499 U.S. 340 (1991) ................................................................................................................8

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016) ..................................................................................................19

*Hartmann v. Popcornflix.com LLC*,
  690 F. Supp. 3d 309 (S.D.N.Y. 2023) ......................................................................................7

*Hesse v. Godiva Chocolatier, Inc.*,
  463 F. Supp. 3d 453 (S.D.N.Y. 2020) ....................................................................................20

*Jorgensen v. Epic/Sony Records*,
  351 F.3d 46 (2d Cir. 2003) .....................................................................................................12

*Judith Ripka Designs, Ltd. v. Preville*,
  935 F. Supp. 237 (S.D.N.Y. 1996) .........................................................................................10

*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) .........................................................7

*LaChapelle v. Fenty*,
  812 F. Supp. 2d 434 (S.D.N.Y. 2011) ................................................................................14, 15

*Litwin v. Blackstone Group, L.P.*,
  634 F.3d 706 (2d Cir. 2011) ........................................................................................6, 14

*May v. Sony Music Entertainment*,
  399 F. Supp. 3d 169 (S.D.N.Y. 2019) ...............................................................................20

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ..............................................................................................20

*Nina Designs, Ltd. v. Bjorn's Colorado Honey Inc.*,
  25-CV-3171 (LAP), 2026 WL 810423 (S.D.N.Y. Mar. 23, 2026) ........................................9

*OMG Accessories LLC v. Mystic Apparel LLC*,
  19-CV-11589 (ALC)(RWL), 2021 WL 1167528 (S.D.N.Y. Mar. 25, 2021) ............14, 15, 16

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
  602 F.3d 57 (2d Cir. 2010) .........................................................................................11, 13

*Ritani, LLC v. Aghjayan*,
  880 F. Supp. 2d 425 (S.D.N.Y. 2012) ................................................................................10

*Schneider v. Pearson Education, Inc.*,
  12-CV-6392 (JPO), 2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013) .....................................7, 8

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  81 F.2d 49 (2d Cir. 1936) ....................................................................................................2

*SMS Group Inc. v. Pharmaaid Corp.*,
  23-CV-1777 (EK)(TAM), 2023 WL 6929653 (E.D.N.Y. Oct. 19, 2023) ............................18

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998) ..............................................................................................11

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003) ...........................................................................................9, 10

*Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*,
  547 F. Supp. 2d 356 (S.D.N.Y. 2008) .................................................................................9

*Warner v. Amazon.com, Inc.*,
  22-CV-5907 (ALC), 2023 WL 6317954 (S.D.N.Y. Sept. 28, 2023) ....................................13

*Wolstenholme v. Hirst*,
  271 F. Supp. 3d 625 (S.D.N.Y. 2017) ................................................................................10

*Yurman Design, Inc. v. PAJ, Inc.*,
  262 F.3d 101 (2d Cir. 2001) .......................................................................................8, 9, 13

**Statutes & Rules**

17 U.S.C. § 410(c) .......................................................................................................................8

Fed. R. Civ. P. 12(b)(6) .....................................................................................................*passim*

Plaintiff Cemayla, LLC dba FoundRae ("FoundRae") hereby submits this memorandum of law in opposition to Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 23, "Motion" or "Mot.")

I.    **PRELIMINARY STATEMENT**

FoundRae is a luxury jewelry brand known for its hand-crafted medallion designs, each of which features original compositions. Two of FoundRae's original works – the "Balance" and "Passion" Medallions – are at issue in this case. The Balance Medallion presents a striking yin-yang composition: a circular pendant bisected by a gradual S-curve dividing the pendant into a gold half that bears a sun radiating straight, equal-length rays, and a silver half bearing a thin-crescent moon and a constellation of small stars. The Passion Medallion bears a centered pair of crossed arrows, both pointing in the same direction, with a single star above the point where the arrows intersect – all framed by a notched, ornamental border comprised of an inner and outer perimeter. FoundRae secured federal copyright registrations for both designs (the Passion Medallion in 2021, and the Balance Medallion in 2023), and built each into a recognized signature of its brand through years of widespread sales and press coverage.

This case concerns the unlawful copying of those two designs by Defendants Pandora Jewelry LLC and Pandora A/S (together, "Pandora"), a mass-market jewelry company that, in August 2025 (years after FoundRae's registrations issued and its medallions had become widely recognized), released a "Talisman Collection" containing pendants that reproduce the distinctive selection, arrangement, and expression of FoundRae's Balance and Passion Medallion designs.

FoundRae first learned of Pandora's copying from its own customers who took notice of Pandora's promotion of its new Talisman Collection – a collection comprised of twelve medallions, at least half of which emulated certain of FoundRae's medallions. In the case of two

1

of Pandora's products in particular, the similarities in protected expression were so substantial that they crossed the line to unlawful copying.

By its Motion, Pandora asks the Court to strip FoundRae's registered designs of any protection, dissect them into atomized pieces, and then, in comparing FoundRae's designs to Pandora's copies, ignore the similarity in overall concept and feel that an ordinary observer could not miss. But that is not the law in this Circuit, where it has long been held that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936).

In seeking dismissal at this stage, Pandora bears the heavy burden to establish that *no reasonable juror* could find these works substantially similar in terms of their overall concept and feel. To do so, Pandora asks the Court to find that FoundRae's original designs embody nothing more than unprotectable ideas, in part by arguing that FoundRae has somehow conceded that the designs at issue are unprotectable because FoundRae has stated its jewelry is inspired by classical symbolism and mythology. But FoundRae is not seeking a monopoly on the *idea* of depicting crossing arrows or the *idea* of a sun and moon. Rather, FoundRae seeks to protect its original expression of these symbols as embodied in the two compositions shown on its Balance and Passion Medallions, both of which are the subject of valid U.S. copyright registrations.

Pandora's attempt to argue that the FoundRae designs are entitled to only "thin" protection requiring "virtually identical" similarity should be rejected as well. That standard applies to works whose originality is "slight" because almost everything about them is unprotected. The FoundRae designs are nothing of the sort: they reflect a deliberate selection, coordination, and arrangement of expressive elements – the curved bisection, the metal split, the placement, positioning, and styling of the sun, moon, stars, and arrows, the framing borders –

2

which is precisely the sort of original expression the Copyright Act protects. Moreover, even if Pandora's test were to be applied here, the question of whether two works are "virtually identical" remains a fact-based inquiry unsuited to resolution on the pleadings.

Perhaps recognizing that it cannot meet its extraordinary burden at this procedural stage, Pandora impermissibly asks the Court to consider material outside the scope of the pleadings, including product listings appearing on third-party webpages that are neither incorporated by reference in the Complaint nor the proper subjects of judicial notice under any legal authority. Such matters may not be considered on a 12(b)(6) motion and, therefore, do not provide a proper basis for dismissal. If anything, however, these designs demonstrate just how many distinct and original ways there are to express the symbols of crossing arrows and a sun and moon – only underscoring the extent of Pandora's copying in this case.

Because the Complaint sufficiently pleads Plaintiff's claim and Pandora cannot demonstrate otherwise, the Motion should be denied and discovery allowed to proceed.

## II.    STATEMENT OF FACTS

FoundRae is a fine jewelry brand founded in 2015 by Beth Hutchens. (Compl. ¶¶ 1-2.) FoundRae designs its pieces to be "modern heirlooms" – jewelry pieces that tell stories and reflect the identity and personal values of the wearer. (*Id.*) FoundRae is particularly well known for its distinctive medallion designs, each bearing a unique composition intended to evoke a certain foundational tenet or symbol. (*Id.* ¶ 20.)

In promoting its medallion jewelry, FoundRae has cultivated a unique merchandising aesthetic in which the pieces are arranged in collage-like displays featuring overlapping taped and paperclipped notes, letters, photographs, playing cards and other mementos, with the medallions interspersed throughout. (*Id.* ¶ 19.) This arrangement is meant to reinforce the

3

fundamental concept that FoundRae's pieces are not just jewelry products, but heirlooms designed to tell stories, carry sentimental significance, and be passed down for generations. (*Id.*)

In only ten years, FoundRae has achieved remarkable commercial success. (*Id.* ¶¶ 3-4, 16-19.) FoundRae's designs, which are sold through the FoundRae website, FoundRae's boutique stores across the country, and third-party retailers and department stores, have been featured by the press, including *Vogue*, *Women's Wear Daily*, *Town & Country*, *The New York Times*, *The Cut*, and *Forbes*. (*Id.* ¶¶ 15-16.) FoundRae's pieces have been worn by some of the most famous celebrities and public figures, including Michelle Obama, Taylor Swift, Gwyneth Paltrow, Jennifer Lopez, and Zendaya. (*Id.* ¶ 18.) Ms. Hutchens herself has received numerous nominations and awards for the brand's unique designs, including the 2025 GEM Award for jewelry design by the Jewelers of America. (*Id.* ¶ 17.)

### A.     The "Passion" and "Balance" Medallion Designs At Issue

This action concerns two of FoundRae's medallion designs, both of which are registered with the United States Copyright Office: (1) the "CM74 Passion" design, which is the subject of Copyright Registration No. VAu 1-419-866 issued February 16, 2021 (hereinafter, the "Passion Medallion"); and (2) the "Oversized Exuberance Balance" design, which is the subject of U.S. Copyright Registration No. VA 2-367-295, issued October 23, 2023 (hereinafter, the "Balance Medallion," and together with the Passion Medallion, the "FoundRae Designs"). (*Id.* ¶ 21.)

<table>
<tr><td align="center"><u>**The Passion Medallion**</u></td><td align="center"><u>**The Balance Medallion**</u></td></tr>
<tr><td align="center"></td><td align="center"></td></tr>
</table>

FoundRae owns all right, title, and interest in and to the FoundRae Designs, both of which were created, registered with the U.S. Copyright Office, and sold and advertised widely throughout the United States prior to Pandora's launch of substantially similar designs. (*Id.* ¶¶ 22, 44, 47.)

**B.       Pandora's "Talisman Collection" and the Infringing Products**

Pandora is a mass-market jewelry company that caters to consumers looking for jewelry at accessible price points. (*Id.* ¶ 4.) In August 2025, years after FoundRae's catapult to success and years after FoundRae's modern heirloom designs were critically acclaimed, featured in major fashion magazines, and worn by some of the world's most famous celebrities, Pandora released its "Talisman Collection" – a collection comprised of twelve medallions that were so similar in look and feel to FoundRae's signature pieces, and the marketing tactics employed to promote this collection so reminiscent of FoundRae's – that FoundRae found itself fielding inquiries from customers pointing out the similarities between Pandora's collection and FoundRae's signature medallions. (*Id*. ¶¶ 4-5.)

As shown in the Complaint, at least half of the medallions in Pandora's Talisman Collection feature designs depicting the same symbols that FoundRae has used for its own medallions. (*Id.* ¶ 29.) Moreover, Pandora has emulated the same storytelling motif at the core of FoundRae's brand, even marketing its collection with the tagline "*wear the words you live by with jewelry that celebrates the past and the stories still to come.*" (*Id*. ¶ 5.) Pandora has also displayed its collection using the same distinctive collage-like layout used by FoundRae, interspersing its medallions with photographs, images, notes, and other mementos. (*Id*. ¶ 34.)

In this action, FoundRae has focused its infringement claim on two specific pieces in the Talisman Collection that cross the line from permissible copying to infringement because they are substantially similar in protected expression to FoundRae's Passion and Balance

Medallions. (*Id.* ¶¶ 31-33.) These are: (1) Pandora's crossed-arrows medallion, which reproduces the unique composition of the Passion Medallion; and (2) Pandora's sun-and-moon medallion, which reproduces the unique composition of FoundRae's Balance Medallion (together, the "Infringing Products"), as pictured below. (*Id.*)

**Pandora's Infringing Products**     **FoundRae's Copyrighted Designs**



### III.   STANDARD OF REVIEW FOR 12(b)(6) DISMISSAL OF A COPYRIGHT INFRINGEMENT CLAIM

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.* In deciding a 12(b)(6) motion, the Court must accept as true all factual allegations and draw all reasonable inferences in favor of the Plaintiff. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (noting

that at this stage, the court is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof").

To plead a claim for copyright infringement, a plaintiff with a valid copyright need only allege that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of the plaintiff's work. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995). To survive a 12(b)(6) motion, the complaint must plead: "(1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright." *Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 316 (S.D.N.Y. 2023) (citation omitted). Nothing more is required at this stage. *See Schneider v. Pearson Educ., Inc*., 12-CV-6392 (JPO), 2013 WL 1386968, at *3 (S.D.N.Y. Apr. 5, 2013) (applying notice pleading standard to find copyright infringement claim adequately pled).

## IV.    UNDERLINE ARGUMENT

IV.    **ARGUMENT**

The Complaint includes allegations sufficient to plead each legal element required to state a plausible copyright infringement claim. The Complaint (1) identifies the Balance and Passion Medallions as the original works that are the subject of FoundRae's copyright claim (Compl. ¶ 21); (2) alleges that FoundRae owns the copyright in those works (*id*. ¶ 22); and (3) alleges that the copyrights have been registered, attaching records from the U.S. Copyright Office identifying the registrations covering the works at issue. (¶¶ 21-22, Ex. A.) As to the fourth element, FoundRae alleges that (a) Pandora had access to its designs, which were made publicly available by FoundRae's advertising, promotion, and widespread sales of jewelry

7

bearing the designs for years before Pandora designed and sold its Infringing Products (*id*. ¶ 35); and (b) Pandora infringed FoundRae's copyrights in these designs by manufacturing displaying, advertising, reproducing, distributing, offering for sale, and/or selling products which are substantially similar in overall appearance to FoundRae's copyrighted designs. (*Id*. ¶¶ 32, 48.) This is more than enough to satisfy the Rule 8 pleading requirements for a copyright infringement claim. *See Schneider*, 2013 WL 1386968, at *3 (allegations "that the ten photographs [at issue] were published . . . without valid permission being obtained prior to copying or in excess of its limited licenses" was "specific enough to meet the requirements of Rule 12(b)(6) and Rule 8") (citation omitted).

As explained below, none of Pandora's arguments change the fact that FoundRae has adequately pled each element required to state a claim for relief and, accordingly, there is no basis for dismissal at this stage.

### A. The FoundRae Designs Are Original Compositions Entitled to a Statutory Presumption of Validity, and Pandora's Argument to the Contrary Is Both Wrong and Premature

The FoundRae Designs have each been registered with the U.S. Copyright Office and, accordingly, are entitled to a statutory presumption of validity. *See Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 109 (2d Cir. 2001); *see also* 17 U.S.C. § 410(c). Pandora does not dispute this; rather, Pandora seeks to strip FoundRae's registrations of their legal force by arguing that the designs consist entirely of unprotectable elements. (Mot. at 7-11.)

Under Supreme Court precedent, a work qualifies for copyright protection if it is "original to the author," meaning only that "the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 345 (1991) ("[T]he requisite level of creativity [for

8

copyrightability] is extremely low; even a slight amount will suffice."). The Motion is premised on the flawed assumption that a design is rendered unprotectable if the designer draws on "inspiration" from the public domain, such as "classical symbolism" or "ancient mythology." (*See* Mot. at 2, 10.) Pandora accuses FoundRae of having "conceded" and "admitted" its designs are unprotectable by stating on its website that the conceptual inspiration for its designs are mythological and classical symbols. (*Id.*) But an expressive work is not stripped of copyright protection just because it was inspired by elements from the public domain. Indeed, the Second Circuit has long recognized that "all creative works draw on the common wellspring that is the public domain." *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003). Thus, a work encompassing such elements is not precluded from copyright protection; rather, a plaintiff may claim protection in combinations of elements, as well as the unique selection and arrangement of those elements – even if each constituent element is not original in and of itself. *See, e.g.*, *id*. at 136 (oriental rug combining elements of two rugs in the public domain found protectable and infringed by defendant's copy).

This principle applies equally in the jewelry context. *See, e.g.*, *Yurman Design*, 262 F.3d at 110 (jewelry designs comprised of twisted cable and gemstones warranted protection, including "in the ways [plaintiff] has recast and arranged those constituent elements"); *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*, 547 F. Supp. 2d 356, 364 (S.D.N.Y. 2008) (rejecting argument that jewelry designs incorporating public domain elements, such as "quatrefoil shape" and "metal frame" could not be protected, and finding protection extended to "the design combinations that result from combining those common elements") (citation omitted); *Nina Designs, Ltd. v. Bjorn's Colo. Honey Inc.*, 25-CV-3171 (LAP), 2026 WL 810423, at *6 (S.D.N.Y. Mar. 23, 2026) (denying motion to dismiss copyright claim involving

9

nature-inspired jewelry designs over defendant's arguments that the designs depicted basic elements appearing in nature, such as bees, honeycombs, and flowers).

None of the cases Pandora cites support its position that FoundRae's jewelry designs should be considered unprotectable (at the motion to dismiss stage no less). (*See* Mot. at 8.) Pandora's citations merely support the unremarkable proposition that a plaintiff cannot claim a monopoly over elements such as raw materials (*e.g.*, gemstones, precious metals, enamel), functional features (*e.g.*, clasps and prongs), or ideas standing alone. *See Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F. Supp. 2d 226, 230 (S.D.N.Y. 2000) (finding unprotectable "the idea of using precious metals, gemstones, and enamel to decorate a pendant" but noting "the particular original expression given to such ideas and common features may be protectible"); *Judith Ripka Designs, Ltd. v. Preville*, 935 F. Supp. 237, 242, 248 (S.D.N.Y. 1996) (finding – after conducting a full trial – that plaintiff could not claim protection over elements that witnesses had testified were functional, such as toggle bars and rings as clasps); *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 442-43 (S.D.N.Y. 2012) (noting that ring elements, such as "the location of the stone, type of shank, [and] how the prongs hold the main stone," are not protectable); *Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 638 (S.D.N.Y. 2017) (filtering out the idea of pill-inspired jewelry, but comparing remaining expressive elements, including the "selection, coordination, and arrangement of the replica pills").

FoundRae does not claim protection in unprotectable ideas, raw materials, or functional hardware, but in the original two-dimensional compositions depicted on its Passion and Balance Medallions, including the unique combination and selection of elements and the particular arrangement of these elements within each composition – expressive ornamentation well within the ambit of protection under copyright law. *Tufenkian Imp.*, 338 F.3d at 132. Thus, contrary to

Pandora's assertions (Mot. at 7-10), the source of FoundRae's inspiration does not alter the legal analysis regarding protectability. Nor does it alter the analysis of substantial similarity, as explained below.

### B.    FoundRae Has Adequately Pled Actual Copying and Substantial Similarity

To establish a claim for copyright infringement, a plaintiff must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation omitted). The Complaint adequately pleads both actual copying and substantial similarity.

### 1.    FoundRae Has Sufficiently Alleged Facts That Support Actual Copying

Pandora does not argue – nor could it – that FoundRae has failed to meet its burden at this procedural stage to plausibly allege actual copying. Its vigorous denial that it "actually copied" the FoundRae Designs is improper and irrelevant at this stage. (Mot. at 7), it

A plaintiff may demonstrate "actual copying" either "by introducing direct evidence of copying, or by showing that the defendant had access to the plaintiff's work and that the works are similar enough to support an inference that the defendant copied the plaintiff's work." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) (citation and internal quotation marks omitted). "Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001).

The Complaint adequately pleads that Pandora had access to the FoundRae Designs given FoundRae's success and its widespread advertising, promotion, and sale of the Designs throughout the country. (Compl. ¶¶ 16-19, 34-35.) The Complaint further alleges that Pandora created the Infringing Products to copy the FoundRae Designs as part of its broader Talisman Collection (*id.* ¶¶ 23, 28), which included many other pieces that mirror FoundRae's signature medallion designs and was even marketed using FoundRae's signature merchandising aesthetic. (*Id.* ¶¶ 29-33.) These allegations are sufficient to plead actual copying. *See Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) ("[A] plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are probative of copying.") (citations and internal quotation marks omitted).

### 2. The FoundRae Designs and the Infringing Products Share Substantial Similarity in Total Concept and Feel, Foreclosing Dismissal

Viewed side by side, the FoundRae Designs and the Infringing Products are unmistakably alike in their total concept and feel – the test for substantial similarity in this Circuit. Pandora asks the Court to analyze the similarity between the works in a manner this Circuit has expressly rejected: by stripping each work down to its bare conceptual elements, asking whether any one of those elements is independently copyrightable, and then declaring that whatever happens to remain is "completely different." (Mot. at 12.) That approach not only misstates the applicable test for substantial similarity, it also collapses the difference between idea and expression – treating every original arrangement of public domain elements as if it were no arrangement at all. Under Pandora's approach, no jewelry designer could ever obtain meaningful copyright

12

protection over a composition comprised of various familiar symbols, no matter how original the selection, arrangement, or resulting expression. That is not the law.

### a.      The Applicable Test for Substantial Similarity

The test for substantial similarity is whether "an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design*, 262 F.3d at 111 (citation omitted). The Second Circuit has "disavowed any notion" that courts are "required to dissect [the works] into their separate components and compare only those elements which are in themselves copyrightable." *Peter F. Gaito Architecture*, 602 F.3d at 66 (citation omitted). "Rather, courts must be 'principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work." *Ackerman v. Pink*, 23-CV-6952 (KPF), 2025 WL 716678, at *7 (S.D.N.Y. Mar. 6, 2025) (citations omitted).

Pandora argues that the ordinary observer test can become "more discerning" where the work incorporates unprotectable elements. (Mot. at 5.)  Even so, it is axiomatic that courts must refrain from dissecting works "into their separate components." *Peter F. Gaito*, 602 F.3d at 66 (citation omitted). Instead, courts "keep in mind the distinction between a work's non[-]protectible elements and its *selection, coordination, arrangement, and expression of those elements—which are protectible*." *Warner v. Amazon.com, Inc.*, 22-CV-5907 (ALC), 2023 WL 6317954, at *9 (S.D.N.Y. Sept. 28, 2023) (citations and internal quotation marks omitted) (emphasis added).

Pandora goes further still, urging the Court to find at this stage that the FoundRae Designs are entitled only to "thin" protection requiring "virtually identical" copying to establish infringement. (Mot. at 6-7, 11-12.) That heightened standard does not apply here. It is reserved

13

for works whose protectable expression is so "slight" that "the majority of the work is unprotectable." *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996). The FoundRae Designs are far from that. As described above, each reflects an original combination, arrangement, and styling of expressive choices that Pandora has replicated in violation of the Copyright Act. The question of what test for substantial similarity should apply to the works at issue is, in any event, a fact-based inquiry that cannot be resolved on the pleadings, where the Complaint's allegations must be accepted as true and all reasonable inferences drawn in FoundRae's favor. *Litwin*, 634 F.3d at 715.

> b.   *The Standard to Show a Lack of Substantial Similarity on a 12(b)(6) Motion is High*

The question of similar substantiality "presents one of the most difficult questions in copyright law" and, as such, is "generally a factual inquiry reserved to the trier of fact." *OMG Accessories LLC v. Mystic Apparel LLC*, 19-CV-11589 (ALC)(RWL), 2021 WL 1167528, at *2 (S.D.N.Y. Mar. 25, 2021) (citations omitted). Therefore, to grant a motion dismiss based on a lack of substantial similarity, "the Court must find that 'no reasonable jury, properly instructed, could find that the [] works [at issue] are substantially similar.'" *Id.* at *3 (citations omitted).

On their face, the FoundRae Designs and the Infringing Products are more similar than other works that courts in this District have found similar enough to withstand a motion to dismiss. For example, in *LaChapelle v. Fenty*, the court denied a motion to dismiss, finding sufficient similarity between the plaintiff's photographs and the defendant's music video such that "an ordinary observer may well overlook any differences and regard the aesthetic appeal . . . as the same." 812 F. Supp. 2d 434, 446-47 (S.D.N.Y. 2011). Examples of these works are shown below:

14




Plaintiff's Photograph in *LaChapelle*       Still from Defendant's Music Video




Plaintiff's Photograph in *LaChapelle*       Still from Defendant's Music Video

*Id.* at 450-52. More recently, a court denied a motion to dismiss an infringement claim

concerning the products pictured below:




Plaintiff's Products in *OMG Accessories*       Defendants' Product

*OMG Accessories*, 2021 WL 1167528, at *1, *5. There, the court found "[t]he cumulative effect

of the closed eyes with distinctive eyelashes, rainbow colored locks, glittered horn, and pink

hearts on the face or cheek of the unicorn" presented a similar concept overall, and, therefore, "it would be premature to decide, at [the motion to dismiss] stage, that no reasonable jury, properly instructed, could find that the two works are substantially similar based on their total concept and overall feel." *Id*. at *3 (citation omitted).

        c.        *Applying the Law to the Works at Issue, Pandora*
                          *Cannot Prevail on Its Motion*

The Complaint places the works in direct, side-by-side comparison. (Compl. ¶¶ 6, 31.) The images speak for themselves: an ordinary observer would readily recognize Pandora's pieces as having been taken from FoundRae's. At a minimum, a reasonable juror could so conclude.

FoundRae's registered designs each reflect a distinctive selection, coordination, and arrangement of expressive choices. It is this protected expression – not the underlying ideas of a sun, a moon, or arrows crossing – that Pandora has reproduced. For instance, as shown in the Complaint and below, FoundRae's Balance Medallion and Pandora's imitation thereof not only depict a sun and moon on a circular pendant, but both works are bisected into two halves, with the sun placed on the left and a crescent moon on the right. The division between the two halves in both cases is a curved line down the center that gives the medallion a "yin-yang" appearance. Both pieces are two-toned, using gold for the entire left portion where the sun is positioned and silver for the right where the moon is. Both designs also scatter stars across the silver portion. The "cumulative effect" of these similarities is to create substantial similarity in total concept and feel. *OMG Accessories*, 2021 WL 1167528, at *3.

                      

*FoundRae's Balance Medallion*          *Pandora's Imitation*

16

The same is true for Pandora's imitation of the Passion Medallion. As shown below, both works position a pair of crossed arrows intersecting at roughly the same angle in the center of a gold-colored medallion with a small star placed directly above the point where the two arrows meet. Moreover, the circumference of both medallions feature contoured perimeters to accentuate the medallion shape and frame the arrows and stars.




*FoundRae's Passion Medallion*             *Pandora's Imitation*

Pandora's design choices were neither inevitable nor the result of using the same underlying symbols as FoundRae; Pandora made deliberate choices that, considered together, result in substantial similarity in their total concept and feel to FoundRae's specific expressions.

Pandora asks the Court to pick apart the designs, and to focus only on how they differ while ignoring their cumulative similarity. (Mot. at 12-13.) Pandora's picayune thimbleful of differences – the texture of the metals, the precise number of stars used, whether the arrows point in slightly different directions – arises from the very type of granular dissection that the Second Circuit has cautioned against because such analysis "would result in almost nothing being copyrightable." *Boisson*, 273 F.3d at 272. Here, many of the specific expressive elements of the FoundRae Designs – the selection of elements, their particular arrangement, orientation, and proportions – are present in Pandora's pieces in materially similar fashion. Such similarities warrant discovery into Pandora's design process.

17

The few cases Pandora relies on to argue that the designs lack substantial similarity do not help it. (Mot. at 11-12.) In *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1 (2d Cir. 1996), the Second Circuit affirmed dismissal of a *pro se* plaintiff's claim concerning cow-patterned hat designs, holding that "[p]rotecting [plaintiff's] particular renderings of black splotches on a white background" would risk liability for anyone else creating a similar cow-pattern design. *Id.* at *2. Here, however, the FoundRae Designs exhibit far greater originality than a white background with black splotches; thus, there is no analogous risk of sanctioning a monopoly. The other case Pandora points to, *SMS Group Inc. v. Pharmaaid Corp.*, 23-CV-1777 (EK)(TAM), 2023 WL 6929653 (E.D.N.Y. Oct. 19, 2023) (Mot. at 11-12), involved a motion for a preliminary injunction and therefore applied a much higher standard than the 12(b)(6) standard applicable here.

Finally, Pandora's reliance on *Dean v. Cameron* illustrates precisely why its Motion should be denied. (Mot. at 13.) There, the court granted a motion to dismiss because it concluded that any alleged similarities between landscape scenes from the film *Avatar* and the plaintiff's landscape paintings, which are shown below, were "overwhelmed by their differences." 53 F. Supp. 3d 641, 649 (S.D.N.Y. 2014).



Plaintiff's Paintings in *Dean v. Cameron*



Stills from Defendant's Film in *Dean v. Cameron*

18







| Plaintiff's Paintings in *Dean v. Cameron* | Stills from Defendant's Film in *Dean v. Cameron* |

*Id.* at 651-52. The similarities between FoundRae's medallion designs and Pandora's imitations stand in stark contrast to the works shown above. Neither this case, nor any of the other authorities on which Pandora relies, can support dismissal on the well-pleaded facts in the Complaint.

### C.    The Third-Party Designs Are Outside the Pleadings, But In Any Event Only Underscore the Similarities Between the Works

Despite arguing that this case should be dismissed on the pleadings, Pandora asks the Court to consider material well outside the four corners of the Complaint, including product listings from various third party webpages, purportedly identified through counsel's Google searching. (Mot. at 10.) This is improper.

At this stage, the Court's review is limited to "only a narrow universe of materials," including the "facts stated on the face of the complaint," "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted). It has long been held that considering "extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)," and "risks

19

depriving the parties of a fair adjudication of the claims by examining an incomplete record." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154-55 (2d Cir. 2002). Pandora knows this; indeed, Pandora cited this very case in its brief. (Mot. at 4.)

Nevertheless, Pandora asks the Court to consider unauthenticated webpages that are neither "integral to the Complaint," nor the proper subject of judicial notice. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) ("Judicial notice may be taken of documents that are 'integral to the complaint,' such that the complaint "relies heavily upon [the documents'] terms and effect.") (citation omitted). The Complaint certainly did not mention or rely upon any of the webpages that Pandora asks the Court to consider. Nor would FoundRae concede this material is authentic, accurate, or relevant – and certainly not without a full and fair opportunity to conduct proper discovery. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (even a document integral to the complaint will not be considered if any dispute exists regarding the document's authenticity or accuracy). Since FoundRae did not have notice or an opportunity to conduct discovery regarding the contents of the webpages Pandora has submitted, they should be given no consideration. *See May v. Sony Music Ent.*, 399 F. Supp. 3d 169, 182 (S.D.N.Y. 2019) (declining to consider webpages submitted with motion to dismiss purportedly showing that a phrase in plaintiff's song was not original; this was a matter "to be explored in discovery and ultimately considered on summary judgment"). If the Motion is not denied, it should, at the very least, be converted into a motion for summary judgment so that FoundRae can have the opportunity to take discovery and supplement the record with its own evidence. *Id.*; *see also Chambers*, 282 F.3d at 155.

Even if considered, the third-party product listings that Pandora points to only underscore the myriad ways in which a designer may choose to express the symbols of crossing arrows and

20

a sun/moon on jewelry, thereby establishing that FoundRae is not seeking to monopolize the idea of these symbols, rather, FoundRae seeks redress for the copying of its protected expression. By way of example only, the pieces below (appearing at Exhibit 3 to the Boyajian Declaration, ECF No. 24-3) depict crossing arrows and sun/moon designs in markedly different ways than FoundRae has. This alone demonstrates that Pandora easily could have presented crossing arrows or a sun/moon design on its own medallions without encroaching on FoundRae's copyright.

   

## V.    CONCLUSION

For the foregoing reasons, Pandora has not demonstrated that FoundRae has failed to sufficiently plead a plausible claim for copyright infringement. Thus, the Motion should be denied. In the alternative, if the Court finds that Pandora's Motion has merit, then FoundRae respectfully requests leave to replead to address any deficiencies that the Court identifies.

Dated: New York, New York          Respectfully submitted,
     May 4, 2026

                                   By:   _/s/ John Margiotta_
                                         John P. Margiotta (*jmargiotta@fzlz.com*)
                                         Shelby P. Rokito (*srokito@fzlz.com*)
                                         FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                                         151 West 42nd Street, 17th Floor
                                         New York, New York 10036
                                         Tel: (212) 813-5900

                                         *Attorneys for Plaintiff*

21